[Civ. No. 6890. First Appellate District, Division One.—January 28, 1930.]

NELLIE ARMSTRONG et al., Respondents, v. WILLIAM C. DAY, Appellant.

Myrick & Deering and Scott for Appellant.

Charles W. Dooling and Edwin V. McKenzie for Respondents.

THE COURT.—This action was brought by Nellie Armstrong (who will be hereinafter referred to as the plaintiff) and her husband against William C. Day to recover damages alleged to have been sustained by reason of defendant's negligent operation of an automobile. A jury returned a verdict for the plaintiff. The defendant has appealed from the judgment entered thereon.

As grounds for reversal it is claimed that the evidence is insufficient to sustain the verdict; that the court erred in allowing an amendment to the complaint during the trial, and in giving and refusing certain instructions.

The injuries occurred at the corner of Post and Kearny Streets in San Francisco. These streets run east and west and north and south, respectively. On each street and occupying the center thereof are double tracks of a street railway, and a track connecting the northerly track on Post Street with the westerly track on Kearny Street rounds the northwest corner of the intersection. The westerly sidewalk on Kearny Street is fourteen feet wide, and it is eleven feet seven inches from the most northerly rail of the tracks on Post Street to the northerly curb line of said street.

On Saturday, October 23, 1926, at about 2:45 o'clock P. M. the plaintiff, who was about sixty years of age and in good physical condition except for the entire loss of vision of the left eye, started to cross Post Street. She was walking in the center of the pedestrian pathway about seven feet from the westerly curb line of Kearny Street, her course being from south to north. According to her testimony, before stepping from the sidewalk into Post Street she looked both ways, ascertained that it was safe to proceed, and continued to look while crossing the street. When she

reached a point between the most northerly rail of the car tracks on Post Street and the northerly curb of that street she was struck by a Buick sedan driven by defendant, which rounded the corner from Kearny Street, and it was testified that no audible signal of its approach was given. Plaintiff testified that she first saw the automobile when it suddenly rounded the corner and was about seven feet away, and that the front of the automobile struck and knocked her down. Her left hip and left arm and head were abraded, and the left side of her body bruised, and she also received internal injuries.

According to the testimony, a person riding with the defendant declared in his presence immediately after the accident, ''We struck her. We do not deny it,'' and the defendant at the same time and place said, ''We don't deny striking her.'' The defendant and his witnesses testified that plaintiff stumbled and fell against the automobile; and testimony as to where her body lay after the accident tended to confirm their testimony. On the other hand, according to the plaintiff and another witness, she had reached a point five or six feet from the northerly curb of Post Street when she was struck by the front of the car. While it is contended that the only reasonable conclusion as to how the injury occurred corresponds with the testimony of defendant's witnesses we cannot say that the finding of the jury to the contrary is unsupported. The question was properly submitted to them, and the evidence being conflicting, their finding cannot be disturbed.

The original complaint alleged that plaintiff suffered a fracture of the left side of the pelvis and numerous bruises and contusions, causing her to become permanently disabled. During the trial an amendment to conform to the proof was permitted. The amended pleading alleged: ''a separation of the ilium from the sacrum, causing a sacro-iliac slip and consequent arthritis in and about the left sacro-iliac joint, and a separation of the right ilium from the right side of the sacrum, causing on the left side thereof a sacro-iliac slip and a consequent arthritis in and about said joint.'' Further, that ''by reason of said injuries to the pelvic bones the bladder and nerves thereof were injured and the normal function thereof disturbed.'' These allega-

tions received support from the testimony of a physician called by the plaintiff.

The allowance of such amendments rests in the sound discretion of the trial court (*Hancock* v. *Board of Education,* 140 Cal. 554 [74 Pac. 44]) and may be made at any stage of the trial (*Gartlan* v. *G. A. Hooper & Co.,* 177 Cal. 414 [170 Pac. 1115]).

The facts of the present case afford no ground for the contention that the defendant was prejudiced thereby or that the court abused its discretion.

Defendant offered and the court refused an instruction in effect that the presence or absence of negligence is not to be tested by the event. While the offered instruction was proper the subject was substantially covered by the following instruction given by the court at defendant's request: ''Upon plaintiffs rests the burden of showing by a preponderance of the evidence that it was the negligence of the defendant which caused the injury. Unless plaintiffs make this proof they cannot recover. A mere surmise that there may have been negligence on the part of defendant, or the mere fact that an accident happened to the plaintiff, Mrs. Armstrong, does not entitle the plaintiff to a verdict.''

The court instructed as to the care required of one suddenly confronted with imminent danger. Appellant complains that the instruction was erroneous in omitting to state that one seeking the benefit of the rule must be without fault; and further, that there was no evidence to which such an instruction was applicable.

While the authorities leave the correctness of the instruction as an abstract statement of law in doubt, the second contention must be sustained. It is the rule that instructions must find support in the evidence (*Thomas* v. *Gates,* 126 Cal. 1 [58 Pac. 315]; *Risdon* v. *Yates,* 145 Cal. 210 [78 Pac. 641]); but notwithstanding this, to justify a reversal it must appear that a miscarriage of justice resulted (Const., art. VI, sec. 4½; *Estate of Baird,* 193 Cal. 225 [223 Pac. 974]; *Lawrence* v. *Goodwill,* 44 Cal. App. 440 [186 Pac. 781]; *Hoffman* v. *Pacific Elec. Ry. Co.,* 45 Cal. App. 751 [188 Pac. 597]; *Straten* v. *Spencer,* 52 Cal. App. 98 [197 Pac. 540]; *Freeman* v. *Adams,* 63 Cal. App. 225 [218 Pac.

600]), and there is nothing in the present case to support that conclusion.

The court refused to instruct that there was no evidence that defendant was driving at a rate of speed in excess of that allowed by law, viz., fifteen miles per hour, and that consequently it was the duty of the jury to find that he was not traveling at a speed in excess of that allowed by law.

While there was no evidence that the defendant was traveling more than fifteen miles per hour, the instruction nevertheless was properly refused. Section 113 of the California Vehicle Act (Stats. 1923, p. 553) provided that "Subject to the provisions of subdivision a of this section, and except in those instances where a lower speed is specified in this act, it shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding the following. . . . " This section fixed a limit of fifteen miles per hour for the locality where the accident occurred, subject, however, to subdivision a thereof, which was as follows: "Any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper having due regard to the traffic, surface and width of the highway; and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person."

It has been held repeatedly that the California Vehicle Act does not fix the speed at which a driver may propel an automobile and escape liability by a claim that he is not exceeding the speed limit prescribed by the act, as under the provisions of subdivision a of the above section a speed greater than is reasonable and proper under the circumstances is unlawful irrespective of whether a greater rate of speed is designated in other subdivisions of the same section (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125]; *Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389 [212 Pac. 913]; *Power* v. *Crown Stage Co.*, 82 Cal. App. 660 [256 Pac. 457]; *Davis* v. *Brown,* 92 Cal. App. 20 [267 Pac. 754]).

Defendant offered two instructions to the effect that one whose eyesight is defective is for that reason required to exercise greater care and caution for his own protection

than would be required of one whose vision is normal. Both instructions were refused. As stated, the testimony shows that plaintiff had lost the use of her left eye. Her other eye, however, was good. It further appears that although the defendant did not see the plaintiff until his automobile had turned the corner, she saw the approaching vehicle from the time it commenced to turn, the distance from this point to her position in the pedestrian pathway being about seven feet. According to her testimony, the turn was made so rapidly that she was unable to avoid the collision. It is the rule that one whose faculties are impaired is required to exercise care sufficient to make good these defects (*Furtado* v. *Bird,* 26 Cal. App. 152 [146 Pac. 58] ; 45 Cor. Jur., Negligence, p. 996, secs. 549, 550). But here, it being undisputed that plaintiff saw everything which normal vision would have disclosed, the only question was whether, after seeing the approaching automobile she used due care to avoid it. Under these circumstances the refusal of the instruction was not error.

The court also refused an instruction to the effect that if the injury was sustained not as the natural consequence of some act of the defendant, but by reason of the interposition of some independent cause, there could be no recovery. In the present case there is no evidence of an intervening cause of the injury, and the instruction was properly refused.

An instruction that the plaintiff was entitled to recover actual damage only, and that no allowance could be made for exemplary damages, was also refused. The refusal was not prejudicial. The complaint prayed for no punitive damages; and the jury was fully instructed that in cases of this character compensation is the measure of damages; furthermore, that this might include the reasonable value of physicians' and nurses' services and hospital care, with such reasonable sum as the jury might award as general damages for the mental and physical pain caused by the injury or certain to be suffered in the future, not exceeding the amount prayed for in the complaint.

We are satisfied that the verdict is fairly supported, and after an examination of the entire record, including the evidence, are of the opinion that no error is disclosed which

can reasonably be said to have resulted in a miscarriage of justice.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 27, 1930.

All the Justices concurred.